```
 1                    UNITED STATES DISTRICT COURT
                      SOUTHERN DISTRICT OF FLORIDA
 2
                      CASE NO. 21-MJ-06112-AOV
 3
      UNITED STATES OF AMERICA,
 4                                        Miami, Florida
                      Plaintiff(s),
 5                                        March 1, 2021
                vs.
 6
      PETER GERACE, JR.,
 7
                      Defendant(s).       Pages 1 - 34
 8    ------------------------------------------------------------

 9                            HEARING
                  TRANSCRIBED FROM DIGITAL AUDIO RECORDING
10                 BEFORE THE HONORABLE ALICIA O. VALLE
                     UNITED STATES MAGISTRATE JUDGE
11
      APPEARANCES:
12
      FOR THE PLAINTIFF(S):  BRENDAN CULLINANE, ESQ.
13                           UNITED STATES ATTORNEY'S OFFICE
                             WESTERN DISTRICT OF NEW YORK
14                           138 Delaware Avenue
                             Buffalo, New York 14202
15                           (716) 843-5839
                             brendan.cullinane@usdoj.gov
16

17                           JAMES USTYNOSKI, ESQ.
                             UNITED STATES ATTORNEY'S OFFICE
18                           SOUTHERN DISTRICT OF FLORIDA
                             99 NE 4th Street
19                           Miami, FL 33132
                             (305) 961-9001
20                           james.ustynoski@usdoj.gov

21

22

23

24

25
```

```
 1    APPEARANCES (CONT'D)

 2
      FOR THE DEFENDANT(S):   JOEL L. DANIELS, ESQ.
 3                            42 Delaware Avenue
                              Buffalo, NY 14202
 4                            (716) 856-5140

 5

 6    TRANSCRIBED BY:         Joanne Mancari, RPR, CRR, CSR
                              Court Reporter
 7                            jemancari@gmail.com

 8

 9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25
```

1    Thereupon,

2    the following proceedings were held:

3              THE DEPUTY CLERK:  United States v. Peter Gerace, case

4    No. 21 6112.

5              Counsel, please announce your appearance for the

6    record.

7              MR. CULLINANE:  Good afternoon, your Honor.  Brendan

8    Cullinane, assistant United States attorney from the Western

9    District of New York, in Buffalo, New York, appearing on behalf

10   of the government today.

11             MR. DANIELS:  Joel Daniels.

12             THE COURT:  Can you repeat all that.  You turned into

13   some mechanical robot talking.

14             MR. CULLINANE:  I apologize, your Honor.  My first

15   name is Brendan, B-R-E-N-D-A-N, and my last name is Cullinane,

16   C-U-L-L-I-N-A-N-E.  I am an AUSA in the Western District of New

17   York, in Buffalo, New York.

18             Thank you.

19             THE COURT:  All right.  Thank you.

20             And locally?

21             MR. DANIELS:  Judge, I'm Joel Daniels, D-A-N-I-E-L-S.

22   I am an attorney in Buffalo, New York, and I am appearing for

23   Mr. Gerace.

24             Thank you.

25             THE COURT:  Thank you.

```
 1              Mr. Daniels, have you filed a permanent appearance on

 2   this matter?

 3              MR. DANIELS:  I haven't filed anything formally,

 4   Judge.  I have been in touch with Mr. Cullinane and our

 5   representative of the government in this case.  I have talked

 6   to them many times over the last 15 months.

 7              THE COURT:  All right.  We will take one step at a

 8   time.

 9              MR. DANIELS:  Yes.

10              THE COURT:  Mr., is it Gerace or Gerace?  How do I say

11   your name?

12              THE DEFENDANT:  Gerace.

13              THE COURT:  Gerace?

14              THE DEFENDANT:  Gerace.

15              THE COURT:  Thank you, Mr. Gerace.

16              Is that you?  I just want to identify you in the

17   cellblock and confirm that it is you.

18              THE DEFENDANT:  Yes, this is me.

19              THE COURT:  All right.  Thank you.

20              Secondly, Mr. Gerace, I want to confirm that I have

21   your permission to proceed by Zoom.  Normally we would all be

22   in the courtroom, but because of the COVID virus, most of us

23   are working, as you can see, from home, our offices.

24              You do have the right to be in the courtroom if that

25   is what you want, but I am asking whether or not you will allow
```

1    me to proceed by Zoom.

2              THE DEFENDANT:  Yes, your Honor.

3              THE COURT:  Thank you.

4              Any objection, Mr. Daniels?

5              MR. DANIELS:  None, your Honor.

6              THE COURT:  Mr. Cullinane, from the government?

7              MR. CULLINANE:  No objection.  Thank you, Judge.

8              THE COURT:  All right.  Thank you very much.

9              Mr. Gerace, I want to advise you of your rights in

10   connection with your appearance here this morning.  If you have

11   any questions, please let me know.

12             Also, if at any point during the proceedings there is

13   any kind of equipment malfunction, you can't see me or hear us

14   or whatever, wave your hands, get our attention, so that we can

15   fix the problem.  OK?

16             THE DEFENDANT:  OK.  Is my picture supposed to be up

17   here?

18             THE COURT:  We see you.  I don't think you see

19   yourself maybe.

20             THE DEFENDANT:  OK.  That is fine.

21             THE COURT:  We see you.

22             THE DEFENDANT:  OK.

23             THE COURT:  Do you see our pictures?

24             THE DEFENDANT:  I can see everybody, yes.

25             THE COURT:  OK.  Good.  You know what you look like

```
 1   anyway.
 2          All right.  So let me get back on a serious note to
 3   advise you of your charges and of your rights.
 4          First of all, you have the right to remain silent.
 5   Anything that you say can be used against you by the
 6   government.  You have the right to have a lawyer to represent
 7   you, and of course this morning we have Mr. Daniels here to
 8   represent you.  But if you couldn't afford Mr. Daniels, the
 9   court would be able to appoint a lawyer for you at no cost if
10   you met certain financial conditions.  OK?
11          THE DEFENDANT:  Yes.
12          THE COURT:  Also, you have the right to have a bond
13   hearing or a detention hearing if the government is requesting
14   that you be detained pending trial.  At that time either myself
15   or another judge would make the decision of whether to release
16   you on a monetary bond or detain you pending trial.
17          Do you understand that, sir?
18          THE DEFENDANT:  Yes, your Honor.
19          THE COURT:  Also, if you are released on a monetary
20   bond, you are nonetheless subject to arrest and revocation of
21   release if you violate any of the non-monetary terms,
22   conditions that I may impose along with the monetary bond.
23          Do you understand that, sir?
24          THE DEFENDANT:  Yes, your Honor.
25          THE COURT:  Also, as I mentioned before, this
```

1    indictment -- has this been unsealed, Mr. Cullinane?

2              MR. CULLINANE:  Yes, your Honor, it has been unsealed.

3              THE COURT:  So you were arrested pursuant to an

4    indictment that came out of the Western District of New York,

5    not here locally in the Southern District of Florida.  As a

6    result, you are entitled to certain other procedural safeguards

7    in addition to the rights that I just told you about, and I am

8    going to advise you of those.

9              The first one is you have the right to have what's

10   called an identity hearing.  At that hearing the government

11   would have to establish that you are in fact the Peter Gerace

12   that the Western District of New York has charged.  In other

13   words, that they haven't gotten the wrong person.  You can

14   choose to have that hearing or you can choose to waive that

15   hearing, and you can do that with the advice of your lawyer.

16             Do you understand that, sir?

17             THE DEFENDANT:  Yes, your Honor.

18             THE COURT:  You also have the right to have, as I

19   said, the bond hearing or the detention hearing here or in the

20   Western District of New York.  You and your lawyer have to

21   decide where you want to have it.  You only get one shot.

22             Understood?

23             THE DEFENDANT:  Yes, your Honor.

24             THE COURT:  And lastly, you have the right to explore

25   resolving this case here in South Florida if you wanted to,

```
1    pursuant to Rule 20 of the criminal rules, but only if you

2    wanted to plead guilty.  If you wanted to go to trial on these

3    charges, you have to do that in the Western District of New

4    York.

5              Understood?

6              THE DEFENDANT:  Yes, your Honor.

7              THE COURT:  Also, if you wanted to plead guilty here

8    and transfer the case to South Florida, that could only be done

9    if both prosecutors in New York and Florida agree.

10             Understood?

11             THE DEFENDANT:  Yes, your Honor.

12             THE COURT:  Ultimately, you have the right to have the

13   removal hearing here or you can choose to waive your right and

14   go back and answer these charges forthwith in the Western

15   District of New York.

16             Do you understand that, sir?

17             THE DEFENDANT:  Yes, your Honor.

18             THE COURT:  All right.  I am going to ask the

19   prosecutor -- this is a very lengthy indictment and my printer

20   ran out of paper at page 33, so I am going to ask the

21   government to please summarize the charges in the indictment as

22   well as the maximum penalties.

23             MR. CULLINANE:  Thank you, Judge.

24             Judge, the defendant is charged as a defendant in this

25   case along with a codefendant in a second superseding
```

1   indictment that contains 18 counts.  Defendant Peter Gerace,

2   Jr. is charged in five of those counts, and that includes

3   Counts 2, 6, 7, 8 and 9.

4          Count 2 has a number of paragraphs, which I will

5   summarize in general.

6          In Count 2, the defendant, Peter Gerace, Jr., along

7   with his codefendant, are charged with conspiracy to defraud

8   the United States, in violation of Title 18, United States

9   Code, Section 371.

10          The allegations of the introduction of the indictment

11   are repeated and re-alleged and incorporated by reference as if

12   set forth fully here into Count 2.

13          Additionally, beginning in or about 2005 and

14   continuing until in or about February 2019, the exact dates

15   being unknown, in the Western District of New York and

16   elsewhere, the defendants, including Peter Gerace, Jr. and

17   Joseph Bongiovanni, did knowingly, willfully, and unlawfully

18   combine, conspire, and agree together and with others, known

19   and unknown, to defraud the United States and the DEA by

20   interfering with and obstructing, by means of deceit, craft,

21   and trickery, the lawful and legitimate governmental functions

22   and rights of the DEA, that is, the right to have its business

23   and its affairs, and the transaction of the official business

24   of DEA, conducted honestly and impartially, free from

25   corruption, fraud, improper and undue influence, dishonesty,

1    unlawful impairment and obstruction; and the right to the

2    conscientious, loyal, faithful, disinterested and unbiased

3    services, decisions, actions, and performance of his duties by

4    the defendant, and in this case codefendant Joseph Bongiovanni,

5    in his official capacity as a DEA special agent, free from

6    corruption, impartiality, improper influence, bias, dishonesty

7    and fraud in dealing with the DEA and other law enforcement

8    agencies.

9          Further, directly and indirectly, corruptly to give,

10   offer, and promise a thing of value to a public official, with

11   intent to induce the performance of an official act and to

12   induce a public official to do an act and to omit to do an act

13   in violation of his lawful duties, as opportunities arose, in

14   violation of Title 18, United States Code, Section

15   201(b)(1)(C); and directly and indirectly, corruptly to demand,

16   seek, receive, accept, and agree to receive and accept, a thing

17   of value personally, in return for being influenced in the

18   performance of an official act and for being induced to do an

19   act and omit to do an act in violation of official duty, as

20   opportunities arose, in violation of Title 18, United States

21   Code, Sections 201(b)(2)(A) and 201(b)(2)(C).

22         As indicated before, the manner and means in which the

23   act allegedly occurred are described in paragraphs 3 through

24   36.

25         The defendant faces a term of imprisonment of not more

1    than five years, a fine of up to $250,000 --

2              THE COURT:  I'm sorry.  Can you repeat that?

3              MR. CULLINANE:  I'm sorry.

4              The defendant as charged faces a term of imprisonment

5    of not more than five years, a fine of up to $250,000, and a

6    term of supervised release up to one year.

7              THE COURT:  I'm sorry.  That is on Counts 6 and 7?

8              MR. CULLINANE:  Your Honor, that is on Count 2.

9              THE COURT:  That was all the conspiracy.

10             MR. CULLINANE:  Thank you, Judge.

11             Count 6, your Honor, is the next one, and that is

12   paying a bribe to a public official.

13             As described in the indictment, beginning in or about

14   2009 and continuing until on or about June 6, 2019, in the

15   Western District of New York, the defendant, Peter Gerace, Jr.,

16   did, directly and indirectly, corruptly give, offer, and

17   promise a thing of value to a public official, namely, a DEA

18   special agent, with intent to induce the performance of an

19   official act and to induce a public official to do an act and

20   omit to do an act in violation of his lawful duty, as

21   opportunities arose; that is, the defendant, Peter Gerace, Jr.,

22   paid and facilitated bribe payments to Joseph Bongiovanni, a

23   DEA special agent, in United States currency to, among other

24   acts, falsely advise a Federal Bureau of Investigation special

25   agent that the defendant, Peter Gerace, Jr., was a DEA

1    confidential source, thereby inducing the FBI special agent to

2    abandon a narcotics investigation into the defendant Peter

3    Gerace, Jr. and Pharaoh's nightclub; to create an official DEA

4    6 document falsely stating that the defendant Peter Gerace, Jr.

5    was a DEA source; to provide advice and information to the

6    defendant Peter Gerace, Jr.; to help the defendant Peter

7    Gerace, Jr. and Pharaoh's Gentlemen's Club avoid federal

8    narcotics investigations; to induce Joseph Bongiovanni to use

9    his position as a DEA special agent to make statements to his

10   coworker, his fellow DEA special agent, to dissuade and

11   discourage the fellow DEA special agent from investigating the

12   defendant Peter Gerace, Jr. and Pharaoh's; to make false and

13   misleading statements to other members of law enforcement; to

14   provide information about law enforcement methods and

15   techniques; to help such drug trafficking activities continue;

16   and to make false statements in official DEA memoranda in order

17   to minimize the relationship between Bongiovanni and the

18   defendant Peter Gerace, Jr. as a means to conceal their

19   conspiratorial relationship, all in violation of Title 18,

20   United States Code, Sections 201(b)(1)(A) and Section

21   201(b)(1)(C).

22          As charged in Count 6, the defendant faces a term of

23   imprisonment of not more than 15 years, a fine of up to

24   $250,000, and a term of supervised release up to three years.

25          Count 7 charges the defendant, Peter Gerace, Jr., with

1    maintaining a drug-involved premises.

2           As described in the second superseding indictment,

3    beginning in or about 2006 and continuing until on or about

4    December 12, 2019, in the Western District of New York, the

5    defendant, Peter Gerace, Jr., did knowingly, intentionally, and

6    unlawfully use and maintain a place, that is, the premises

7    known as Pharaoh's Gentlemen's Club, located at 999 Aero Drive,

8    Cheektowaga, New York, for the purpose of manufacturing,

9    distributing, and using cocaine, cocaine base, methamphetamine

10   and amphetamine, also known as Adderall, Schedule II controlled

11   substances, and marijuana and heroin, Schedule I controlled

12   substances, all in violation of Title 21, United States Code,

13   Section 856(a)(1) and Title 18, United States Code, Section 2.

14          As for Count 7, the defendant faces a term of

15   imprisonment of not more than 20 years, a fine of up to

16   $250,000, and a term of supervised release of up to three

17   years.

18          Count 8 charges the defendant with conspiracy to

19   distribute controlled substances.

20          As described in the second superseding indictment,

21   beginning in or about 2009 and continuing until in or about

22   February 2019, in the Western District of New York, the

23   defendants, Joseph Bongiovanni and Peter Gerace, Jr., did

24   knowingly, willfully, and unlawfully combine, conspire and

25   agree together and with others, known and unknown, to commit

1   the following offenses, that is, to possess with intent to

2   distribute and to distribute cocaine, cocaine base,

3   methamphetamine and amphetamine and marijuana and heroin, in

4   violation of Title 21, United States Code, Sections 841(a)(1)

5   and 841(b)(1)(C); and to knowingly, intentionally, and

6   unlawfully use and maintain a place that is the premises known

7   as Pharaoh's Gentlemen's Club, located at the 999 Aero Drive,

8   in Cheektowaga, New York, for the purpose of manufacturing,

9   distributing, and using cocaine, cocaine base, methamphetamine

10   and amphetamine and marijuana and heroin, all in violation of

11   Title 21, United States Code, Section 846.

12         As for Count 8, the defendant faces a term of

13   imprisonment of not more than 20 years, a fine of up to $1

14   million, and a term of supervised release of at least three

15   years.

16         Finally, your Honor, the defendant is charged in Count

17   9 with conspiracy to commit sex trafficking.

18         As described in the second superseding indictment,

19   beginning in or about 2009 and continuing to in or about 2018,

20   in the Western District of New York, the defendant, Peter

21   Gerace, Jr., did knowingly, willfully, and unlawfully combine,

22   conspire, and agree with others to knowingly recruit, entice,

23   harbor, transport, provide, obtain, and maintain by any means,

24   in and affecting interstate and foreign commerce, persons, and

25   to benefit, financially and by receiving anything of value,

1    from participation in a venture which has engaged in such acts,

2    knowing and in reckless disregard of the fact that means of

3    force, fraud, and coercion, and a combination of such means,

4    would be used to cause such persons to engage in a commercial

5    sex act, in violation of Title 18, United States Code, Sections

6    1591(a) and 1591(b)(1), all in violation of Title 18, United

7    States Code, Section 1594(c).

8            As for this count, Count 9, the defendant faces a term

9    of imprisonment of not less than 15 years and up to life, a

10   fine of up to $250,000, and a term of supervised release of at

11   least three years.

12           THE COURT:  Thank you very much.

13           Mr. Gerace, did you understand everything the

14   government said about the maximum penalties for these offenses?

15           THE DEFENDANT:  Yes, your Honor.

16           THE COURT:  All right.  I can summarize them for you

17   if you like.

18           Would you like me to do that --

19           THE DEFENDANT:  No.

20           THE COURT:  -- or you understood?

21           MR. DANIELS:  Not necessary.

22           THE DEFENDANT:  No, I understood.

23           THE COURT:  All right.  Thank you very much.

24           What is the government's position on bond?

25           MR. CULLINANE:  Your Honor, at this time the

 1    government has received the Pretrial Services report and,

 2    although it recommends detention, the government at this time

 3    will move for an order setting conditions of release for the

 4    defendant, many of which I've already discussed with

 5    defendant's counsel prior to this appearance.

 6              THE COURT:  Thank you.

 7              Melania, did you send me a Pretrial Services report on

 8    this one?

 9              PRETRIAL SERVICES OFFICER:  Yes, your Honor.  Yolanda

10    sent it to the court.

11              Do you need me to resend it?

12              THE COURT:  Yes, if you don't mind.  I'm sorry.

13    Unless this is when I ran out of paper, I guess.

14              PRETRIAL SERVICES OFFICER:  I just sent it, your

15    Honor.  Let me know if you received it.

16              THE COURT:  All right.  Thank you.

17              I'm sorry for the delay.  Please wait for me.

18              (Pause)

19              THE COURT:  Got it.  Let me just print it out.

20              All right.  I will be right back.  We just have to go

21    get it from the printer.  Excuse me one second.

22              THE DEFENDANT:  Thank you.

23              (Pause)

24              THE COURT:  Mr. Gerace, this is also a removal

25    hearing, so I'd like to hear from Mr. Daniels what they're

```
 1   hoping to do in terms of identity hearing and removal before I
 2   go on to the bond.
 3            MR. DANIELS:  Judge, good morning.  We would waive an
 4   identity hearing.
 5            THE COURT:  Mr. Daniels, can you speak up a little
 6   louder, please.
 7            MR. DANIELS:  I'm sorry, Judge.  Is that better?  I'm
 8   sorry.  Can you hear me?
 9            THE COURT:  There is just a lot of noise in the
10   cellblock which interferes.
11            MR. DANIELS:  I'm sorry.
12            THE COURT:  Hold on.  That is OK.  It happens.
13            MR. DANIELS:  Judge, we will waive an identity hearing
14   and we can proceed with the hearing.  We would ask the court to
15   consider --
16            THE COURT:  I'm sorry.  I keep hearing this squeaky
17   chair that I can't hear you over.
18            Does anybody else hear it or am I going crazy?
19            MR. CULLINANE:  I'm having a difficult time as well,
20   Judge Valle.
21            PRETRIAL SERVICES OFFICER:  I also hear it, Judge.
22            THE COURT:  Thank you.  I felt like I am going crazy.
23   All right.  Thank you.
24            Don't move whoever has the squeaky chair.
25            Mr. Daniels, if you could repeat yourself.  I'm so
```

```
 1   sorry to interrupt you.

 2            MR. DANIELS:  Of course.  That is no problem, Judge.

 3   We understand.  This is what happens on Zoom.  We all

 4   understand it and we have to adjust and live with it.  There is

 5   nothing else we can do about it.

 6            THE COURT:  I think everybody has to be flexible

 7   nowadays, right.

 8            MR. DANIELS:  That is right.  We are.  We certainly

 9   are.  Yes, Judge.

10            We have no objection to an identity hearing.  Excuse

11   me.  We will waive an identity hearing.  That is what I meant

12   to say.

13            THE COURT:  OK.  Thank you.

14            In terms of bond, you were saying Mr. Gerace, that is

15   when I went to get the Pretrial Services report.

16            I'm sorry.  Mr. Cullinane.

17            MR. CULLINANE:  Yes, your Honor.  Yes, your Honor.

18            THE COURT:  Sorry to butcher your name.

19            MR. CULLINANE:  That is OK.  Judge, yes.  The

20   government would ask for a number of conditions to be imposed

21   here.  We are not asking for a monetary bond of any kind, but

22   we are asking that the court place a number of restrictions and

23   conditions in place for an order setting conditions of release.

24            If I could be heard on that.

25            THE COURT:  I'm sorry.  So let's back up.
```

```
 1          The reason I went to get the Pretrial Services report
 2     is because Pretrial Services is recommending detention.  You're
 3     saying don't do that, we have an agreement, and release him and
 4     he is going to make his way back to the Western District, or
 5     what do you want?
 6          MR. CULLINANE:  That is correct, your Honor.
 7          THE COURT:  So what conditions are you proposing?
 8          MR. CULLINANE:  Thank you, your Honor.  First we'd
 9     like to ask for electronic monitoring to be imposed, and we'd
10     like that to be followed by a term of or an order for home
11     confinement after he is returned back to the Western District
12     of New York.  I understand he is in custody right now and he
13     may have been staying in a hotel, but we'd ask that he be
14     ordered to immediately return while on electronic monitoring
15     and be placed on home confinement.
16          We'd ask for no contact with his codefendant,
17     coconspirators or victims.
18          We'd ask for, Judge, an order to be imposed that he
19     stay away from Pharaoh's Gentlemen's Club, which is the
20     establishment that was listed in the indictment and that I
21     referenced a number of times.  That is located at an address of
22     999 Aero Drive, Aero spelled A-E-R-O, Drive, in Cheektowaga,
23     New York, which is spelled C-H-E-E-K-T-O-W-A-G-A, New York.
24          An additional order, your Honor, asking him to stay
25     away from any other clubs or establishments that could be
```

1    described as strip clubs or adult entertainment clubs.

2            We'd ask for, I believe, the standard condition asking

3    for drug testing.

4            We'd ask that the defendant be required to surrender

5    his passport, or it looks like a passport book that he has.

6            We'd ask for no alcohol, no permissible alcohol or

7    drug use.

8            Finally, zero tolerance, your Honor.

9            THE COURT:  What do you mean by "zero tolerance?"

10           MR. CULLINANE:  Well, in this district sometimes, your

11   Honor, we have individuals who may commit an infraction and

12   some courts will impose what they cause zero tolerance, to say

13   that if there is any infraction of any kind, the person will be

14   ordered detained pursuant to a warrant and brought into custody

15   at that time.

16           THE COURT:  Mr. Daniels, any objections to any of the

17   terms that the prosecutor has listed?

18           MR. DANIELS:  Yes, Judge.  I spoke to Mr. Cullinane

19   and Mr. Tripe about those conditions.  Just very briefly,

20   Judge, in the way of background here, Mr. Gerace is 53 years

21   old.  He is divorced.  He lives with his 14-year-old son.  This

22   investigation has been going on for a long time, at least 15

23   months.  He is a long-time resident of Buffalo.  I think he was

24   born and raised here.

25           Concerning electronic monitoring and home confinement

1    and staying out of Pharaoh's, Judge, respectfully, we would

2    object to that.  He is the owner of Pharaoh's and, as

3    Mr. Cullinane rightly described it, it is a gentlemen's club.

4    It opens around noon seven days a week and it stays open until

5    sometimes 3, 4 until the morning.  He is not there 70 percent

6    of the time.  He may go in sometimes around noon or 1 or 2:00

7    in the afternoon and stay for a few hours and just do work in

8    the office.  That's all.  He handles a lot of the paperwork and

9    the business work, and it is a fairly busy place.  But after

10   that, Judge, he isn't there.  He is not there in the evenings.

11        This is his business.  This is what he has been

12   running and owning for the last several years.  The business

13   was owned, I believe, by his mother before that.  So

14   respectfully, Judge, we ask that the court allow him to go to

15   work.  That is what he does.  That is his only business and his

16   only income.

17        As far as not having any contact with the codefendant

18   or codefendants, we understand that, Judge.  But not having any

19   contact with victims, respectfully, we don't know who exactly

20   the victims are.

21        As the court is aware, this is a very lengthy

22   indictment.  It was sealed.  We had not had an opportunity to

23   see it.  It was just emailed to us, I believe, this morning.

24   Hopefully I have enough paper in the printer so I can print it

25   out, but we will review it as soon as we can.  We just don't

```
 1    know who those victims are.

 2              The remaining conditions, Judge, we understand and I

 3    am sure we can deal with them.

 4              THE COURT:  Well, Mr. Daniels, it sounds to me like

 5    those are some major objections to the government's recommended

 6    bond.  If that is the case, then I think you are going to have

 7    to make a decision whether you want to have a bond hearing here

 8    or with the judge in the Western District of New York, because

 9    obviously I am not going to make this decision because it

10    sounds like you want a bond hearing, is what I'm hearing you

11    say.

12              MR. DANIELS:  We don't want that, Judge.  We are

13    willing to go along with the government's recommendation.  We

14    appreciate them allowing him to be released, come back to

15    Buffalo, and appear before a magistrate here, Judge.  We were

16    just opposing for the record some of the conditions that the

17    government was requesting.  But that is your decision, Judge.

18              THE COURT:  I think your client wants to say

19    something.

20              Do you want to speak to your lawyer, Mr. -- I'm sorry;

21    I forgot your name now -- Gerace?

22              MR. DANIELS:  Judge, that is unnecessary.  I don't

23    have to speak to him about that now.

24              THE COURT:  OK.  I'm sorry.  I am a little confused

25    right now.  So do you want me to have a bond hearing or are you
```

```
 1    waiving your right to have a bond hearing here and allowing the
 2    bond hearing to take place in the Western District of New York?
 3         MR. DANIELS:  Yes, Judge.  We would ask that the court
 4    allow his release to come back here and we can address that
 5    issue here.  We would agree that the government's -- sorry.  We
 6    would agree with the government's recommendation for release,
 7    allow him to come back here, again with the conditions,
 8    Judge --
 9         THE COURT:  I'm sorry.
10         MR. DANIELS:  I'm sorry, too, Judge.
11         THE COURT:  It is actually not a squeaky chair.  It
12    sounds like it is the marshal's radio that we are hearing.
13         MR. DANIELS:  That is the way it is.  We understand
14    that.  We were just objecting for the record to some of the
15    conditions that the government was proposing, and I assume
16    those matters could be readdressed once we come back here to
17    Buffalo.  But we'd like to have him released and get back here
18    as soon as he can, Judge.
19         Thank you.
20         THE COURT:  From the government, anything else?
21         MR. CULLINANE:  No, your Honor.  Thank you.
22         THE COURT:  All right.  I understand -- I mean, I'm
23    reviewing -- Tamisha, can you put me in a room with Melania,
24    and I think Mr. Gerace wants to speak to his lawyer at this
25    time.  Maybe Mr. Daniels can call the marshal's cellblock and
```

```
 1    they can speak.

 2            THE DEPUTY CLERK:  OK.  I can provide him with the

 3    telephone number.

 4            MR. DANIELS:  Sure.

 5            THE DEPUTY CLERK:  Mr. Daniels, the number that you

 6    can reach Mr. Gerace is 954 area code 660-5823.

 7            MR. DANIELS:  Sure.

 8            THE DEPUTY CLERK:  Judge, just give me one moment.

 9            THE COURT:  Thank you.

10            (Pause)

11            THE DEPUTY CLERK:  We are back on the record, Judge.

12            THE COURT:  Thank you.

13            I took an opportunity to speak with Pretrial Services.

14            With reference to the sex trafficking charge in Count

15    9, does that involve minors or is that adults?

16            MR. CULLINANE:  Adults.

17            THE COURT:  OK.  Good.  Clarification, because

18    otherwise we would have to impose the Adam Walsh condition.  So

19    I wasn't sure about that.

20            MR. CULLINANE:  You're correct, Judge.  I checked the

21    language again and it reflects the language involving force,

22    fraud, and coercion, combination of such means, not the minor

23    part.

24            Thank you, Judge.

25            THE COURT:  OK.  So no minors.
```

```
 1            MR. CULLINANE:  Correct.

 2            THE COURT:  All right.  Thank you.

 3            Well, this was an interesting case because but for the

 4    government's recommendation, this is a case where I think

 5    detention would be warranted.  However, this is a case that

 6    emanates from the Western District of New York, and the

 7    prosecutor from the Western District of New York is here.  So I

 8    am going to accept the recommended bond, to which I understand

 9    Mr. Daniels will probably oppose once they get into the Western

10    District of New York.  For now the bond will be set as follows.

11            I am going to order that the defendant be detained in

12    home confinement with allowances only for court appearances,

13    medical visits, attorney visits.

14            He will be having electronic monitoring, and

15    specifically I'm referring to GPS location monitoring, services

16    to be paid by the defendant.

17            The defendant is not to have any contact with any

18    codefendant, in this case Mr. Bongiovanni, or any

19    coconspirators or any victims in the case.

20            The defendant is not to visit Pharaoh's Gentlemen's

21    Club at 999 Aero Drive in Cheektowaga, New York, in the Western

22    District.

23            MR. DANIELS:  Cheektowaga.

24            THE COURT:  And not to visit any other strip clubs,

25    adult entertainment clubs in the district.  Not just in the
```

1    area, in the district.

2             The defendant is to submit to drug testing as required

3    by Pretrial Services.  He is to relinquish his passport to the

4    Pretrial Services office and not obtain any new passport during

5    the pendency of the case.  He is also not to have any alcohol

6    use or any illegal drug use.

7             I also need to know the address where he is staying

8    here in Florida.  Pretrial Services needs to contact him

9    immediately.

10            The defendant is not to have any firearms or other

11   dangerous weapons.

12            The travel, I am going to restrict it to the Western

13   District of New York and the Southern District of Florida.  He

14   just needs to get himself up there.  Other than that, travel

15   will be limited to the Western District of New York.

16            Any other recommendations from Pretrial Services or

17   the government?

18            Melania.

19            PRETRIAL SERVICES OFFICER:  Your Honor, we would need

20   the address to put it on the record or where he is staying and

21   a phone number.

22            THE COURT:  Mr. Daniels can provide that to you, I

23   guess.

24            MR. DANIELS:  I don't know it, but I would ask

25   Mr. Gerace to provide that to Ms. Vasquez if she asks him,

```
 1    Judge, if that is OK with the court.

 2              THE COURT:  Yes.

 3              Mr. Gerace, can you please provide where you are

 4    staying, the location.

 5              The GPS monitoring -- Melania, is that what you are

 6    asking?  The GPS will be installed immediately?

 7              PRETRIAL SERVICES OFFICER:  That is correct, your

 8    Honor.  Pretrial cases have to get installed within 24 hours.

 9              MR. DANIELS:  May I speak to Mr. Gerace, Judge?

10              THE COURT:  Yes.

11              MR. DANIELS:  Peter, where are you staying?

12              THE COURT:  He's muted.  There you go.

13              MR. DANIELS:  Peter, where are you staying?

14              THE DEFENDANT:  Right now I don't know.  When I leave

15    here -- they took my phone, so I don't know anybody's phone

16    number except my parents' home phone.  So when I leave here I

17    am going to call my parents and tell them to call my friend

18    Dan, who lives down here, and see if he can pick me up because

19    I have nowhere to go.

20              MR. DANIELS:  Where were you staying?

21              THE DEFENDANT:  I was going to stay at the hotel, but

22    this all happened.  I never --

23              MR. DANIELS:  You didn't check in.

24              THE DEFENDANT:  It's gone now.  I checked in but he

25    checked me out.
```

1        MR. DANIELS:  Do you plan to stay with your friend

2    down here, is that it?

3        THE DEFENDANT:  I am going to take a look as soon as I

4    get out of here, I am going to take a look and see how fast I

5    can get a plane out of here because my plane ticket is for

6    Friday.  I am going to see if I can get out sooner.  I am going

7    to see if I can get a nonstop flight.

8        MR. DANIELS:  Could you just mute him again, please,

9    if that is possible.

10        THE DEFENDANT:  I'm sorry?

11        MR. DANIELS:  I am just asking the court if they could

12   mute you for a moment and I can speak to Ms. Vasquez and the

13   court.  Thank you.

14        May I speak to Ms. Vasquez about that, Judge?

15        THE COURT:  Yes.  Go ahead.

16        MR. DANIELS:  Ms. Vasquez, could you speak to

17   Mr. Gerace and find out where he is going to be staying so that

18   you can set up whatever you need.  You will be able to do that?

19        PRETRIAL SERVICES OFFICER:  You mean right now?

20        MR. DANIELS:  Well, at your convenience.

21        PRETRIAL SERVICES OFFICER:  Yes, we need something on

22   the record.

23        MR. DANIELS:  OK.

24        THE COURT:  I think, on the record, the problem is,

25   Melania, that he is saying he doesn't know what he is doing.

```
 1              So it is giving me quite a lot of pause.  I think I am
 2    trying to bend over backwards to work with the government on
 3    the one hand and with the defense in terms of not holding him,
 4    but I think this case might be better suited for a bond
 5    hearing.
 6              MR. DANIELS:  Judge, we'd like to waive that, not
 7    waive it in a sense, but I don't think we need a bond hearing.
 8    I am sure we can resolve this and we can provide Ms. Vasquez
 9    whatever it is that she is going to need.  Perhaps if I
10    could --
11              THE COURT:  He is not going to be released until she
12    has the information that she requires.
13              MR. DANIELS:  Judge, can I have one minute, beg the
14    indulgence --
15              THE COURT:  Yes, you may call him.
16              MR. DANIELS:  -- I will call him, and hopefully I can
17    provide Ms. Vasquez and the court with whatever they need.  I
18    will call him right now.
19              PRETRIAL SERVICES OFFICER:  And a phone number, too,
20    sir, please.
21              THE COURT:  Bottom line is he will not be released
22    until she has a verifiable address and phone number.
23              MR. DANIELS:  We'll take care of that.
24              I am going to call him right now, Judge.  I'd ask the
25    court not to mute me out because I don't know how to get back
```

1   on and unmute it.  So I will just step out over on the side.

2          THE COURT:  OK.

3          MR. DANIELS:  Thank you.  Thank you very much, Judge.

4          (Pause)

5          MR. DANIELS:  Judge, thank you very much.  I

6   appreciate that.  I know it is late and it's been a long

7   morning for the court.  Early afternoon.

8          He is staying with a friend in Plantation.  I can get

9   the phone number.  If I could have Ms. Vasquez's number, I can

10  call her directly, give her all the information, and we agree

11  he will stay in custody until Ms. Vasquez is satisfied that she

12  has all the information that she needs.  Hopefully I can

13  provide that to her within 15 minutes.

14         THE COURT:  Melania, I think he wants a phone number

15  from you where he can reach you.

16         PRETRIAL SERVICES OFFICER:  Sorry, your Honor.  I was

17  using my headphones.  I couldn't really hear.

18         It is (954) 769-5547.

19         MR. DANIELS:  May I just repeat that back to you,

20  Ms. Vasquez?

21         PRETRIAL SERVICES OFFICER:  Sure.

22         MR. DANIELS:  (954) 769-5547.

23         PRETRIAL SERVICES OFFICER:  That's correct.

24         MR. DANIELS:  I am going to make a couple of phone

25  calls.  I will get the phone, I will get the address, I will

```
 1    get the phone number, and hopefully we can get done whatever we
 2    have to do.
 3           THE COURT:  All right.  I take it that, just to recap
 4    where we are, you are waiving the identity hearing, I will
 5    enter the order of removal, which has to be signed, and the
 6    bond has been set.
 7           MR. DANIELS:  Yes.
 8           THE COURT:  Any other conditions of bond that I
 9    missed, Mr. Cullinane?
10           MR. CULLINANE:  Thank you, Judge.  Just two issues I'd
11    like to address.  I may have missed one of them.
12           The only thing I wanted to note is, just after meeting
13    with Ms. Vasquez that the court has ordered him to immediately
14    or quickly thereafter return to the Western District of New
15    York.
16           THE COURT:  Yes.
17           MR. CULLINANE:  Finally, Judge, there was a concern
18    from Mr. Daniels about the identity of certain people.  One
19    person I would like to address for the record that he stay away
20    from and have no contact with, initiate no contact with, is an
21    individual woman named Katrina, that is spelled K-A-T-R-I-N-A,
22    and her last name is Nigro, N-I-G-R-O.  She was formerly
23    referred to as Katrina Gerace.
24           MR. DANIELS:  We know who she is, Judge.
25           THE COURT:  All right.
```

```
 1              MR. DANIELS:  We will stay away from her.

 2              THE COURT:  To the extent that there are other victims

 3    identified, it will be the government's responsibility to share

 4    those names with the Pretrial Services officer so that they can

 5    enforce that restriction.

 6              MR. CULLINANE:  Thank you, Judge Valle.

 7              THE COURT:  Anything further from either side?

 8              MR. CULLINANE:  Nothing further from the government,

 9    your Honor.

10              THE COURT:  Mr. Daniels, anything further?

11              MR. DANIELS:  No, nothing.  Thank you very much.

12    Thank you.

13              THE COURT:  So I will or we will have to sign the

14    paperwork, Tamisha, for the waiver.

15              MR. DANIELS:  Yes.  He will sign whatever he has to

16    sign, Judge.

17              THE DEPUTY CLERK:  I can email it to defense counsel.

18              I noted for the record that it was verbally waived.

19              THE COURT:  OK.  Great.

20              PRETRIAL SERVICES OFFICER:  Your Honor, just a quick

21    question.  Did the court impose a no firearms restriction in

22    this case?

23              THE COURT:  I did, didn't I?

24              MR. CULLINANE:  Yes, your Honor.

25              THE DEPUTY CLERK:  Yes, you did.
```

```
 1              PRETRIAL SERVICES OFFICER:  Thank you, Judge.
 2              THE COURT:  Yes, I did.  I said no firearms or other
 3    dangerous weapons, surrender the passport, travel restriction
 4    to the Western District of New York and Florida only for
 5    purposes of getting out of here.  After that, only the Western
 6    District of New York.
 7              THE DEFENDANT:  Yes.
 8              THE COURT:  Also, he should notify Pretrial Services
 9    when he will be traveling out to the Western District.
10              All right.  Anything further?
11              MR. DANIELS:  No, Judge.
12              THE COURT:  This is one of the messiest removal
13    hearings we have had.
14              THE DEFENDANT:  Thank you.
15              MR. CULLINANE:  Our apologies, and we owe you a ream
16    of paper.  So thank you, Judge, for your time today.
17              THE COURT:  You're very welcome.
18              All right, everyone.
19              Mr. Gerace, I just want to address you.  One of the
20    things that the government asked for was this zero tolerance
21    order.  We don't usually enter it in this district, but
22    basically what I do in this district is tell the defendants, as
23    I'm about to tell you, how lucky you are because under normal
24    circumstances Pretrial was recommending that you would be
25    detained, and the charges in this case are so substantial that
```

1    but for the government's recommendation you would be detained.

2            So my pitch to you is understand how lucky you are to

3    be released.  Even though it is an inconvenience that you might

4    not be able to go to Pharaoh's, you wouldn't be able to go to

5    Pharaoh's if you were in jail either.  So look at it that way.

6            Being home detained is certainly an advantage that the

7    government has given you an opportunity, but don't blow it.

8    What I'm saying to is if you fail to abide by any of the

9    conditions in my bond, the bond will be revoked and you will go

10   to jail pending trial.

11           Do you understand that, sir?

12           THE DEFENDANT:  Yes, your Honor.

13           THE COURT:  All right.  Thank you.

14           All right, everyone.  Have a good afternoon and stay

15   safe, all of you.

16           MR. DANIELS:  Thank you, Judge.

17           PRETRIAL SERVICES OFFICER:  Thank you, Judge.

18           MR. CULLINANE:  Thank you.

19           THE COURT:  This concludes our calendar.

20           (Adjourned)

21

22

23

24

25

C E R T I F I C A T E

     I hereby certify that the foregoing is an accurate
transcription to the best of my ability of the digital audio
recording in the above-entitled matter.


March 29, 2021          s/ Joanne Mancari
                        Joanne Mancari, RPR, CRR, CSR
                        Court Reporter
                        jemancari@gmail.com